159 So.2d 209 (1963)
Milton ESKIND and Evelyn T. Eskind, his wife, and J. Alphonse Choquette and Helen Vermette Choquette, his wife, Petitioners,
v.
CITY OF VERO BEACH, a municipal corporation organized and existing under the Laws of the State of Florida, Respondent.
No. 32712.
Supreme Court of Florida.
December 18, 1963.
*210 Gould, Cooksey & Fennell and Robert Jackson, Vero Beach, for petitioners.
James T. Vocelle, Vero Beach, G. Warren Sanchez, Tallahassee, and Fred T. Gallagher, Vero Beach, for respondent.
THORNAL, Justice.
By petition for certiorari we are requested to review a decision of the District Court of Appeal, Second District, because of an alleged conflict with a decision of the District Court of Appeal, First District.
We must pass on the validity of a municipal ordinance prohibiting the display of outdoor rate signs by operators of lodging accommodations.
The City of Vero Beach adopted an ordinance which prohibited the use of outdoor signs to advertise rates for tourist accommodations. Petitioners Eskind, who are motel owners, sued for injunctive relief against enforcement of the ordinance. The trial judge held the ordinance to be a valid exercise of the police power. The District Court of Appeal, Second District, affirmed this ruling. Eskind v. City of Vero Beach, Fla.App., 150 So.2d 254. The petitioners contend that this decision is in direct conflict with a decision of the District Court of Appeal, First District, in Abdo v. City of Daytona Beach, Fla.App., 147 So.2d 598, cert. den. March 5, 1963. Examination of the two opinions will reveal that the ordinances of the two cities are practically identical. In effect, they prohibit the use of outdoor signs to advertise rates for accommodations in motels, hotels, tourist homes and other types of lodging houses. In Abdo the District Court of Appeal, First District, held the Daytona Beach ordinance invalid. In Eskind the District Court of Appeal, Second District, held the Vero Beach ordinance to be a valid exercise of the police power. Both courts considered the ordinances from the aspect of preserving the aesthetic qualities of the communities involved. Both courts considered the ordinances from the aspect of the economic importance of the tourist industry and the potential adverse economic impact of price competition in the business of supplying tourist accommodations. Admittedly, both cities enjoy substantial economic benefits from tourism. Both cities are attractive tourist areas. The two District Courts arrived at diametrically opposite views on the validity of almost identical municipal ordinances. The factual background of the two decisions is likewise substantially the same. We are, therefore, confronted by the decisions of two District Courts which have arrived at different conclusions in two situations *211 not materially distinguishable. The two decisions, therefore, produce a real embarrassing conflict in the law which the Constitution contemplates must be resolved by this Court. Article V, Section 4(2), Florida Constitution, F.S.A.; Ansin v. Thurston, Fla., 101 So.2d 808; Nielsen v. City of Sarasota, Fla., 117 So.2d 731.
Finding, as we do, the presence of a jurisdictional conflict patently apparent from the two decisions, we shall proceed to consider the merits of the instant case and decide the points passed upon by the District Court. Tyus v. Apalachicola Northern Railroad Co., Fla., 130 So.2d 580; Pinkerton-Hays Lumber Co. v. Pope, Fla., 127 So.2d 441.
We have recognized the importance of aesthetics in the planning and maintenance of various Florida communities. Dade County v. Gould, Fla., 99 So.2d 236. Customarily, community attractiveness is accomplished by general zoning plans and related regulations which do not segregate selected businesses or activities for confiscatory, discriminatory treatment. A regulation of the type here involved is an exercise of the police power. It must have its foundation in reason and general community welfare. It must not impose discriminatory restrictions on the activities of a carefully selected business while permitting others similarly conditioned to engage in the prohibited activity.
Regulation of signs and outdoor advertising when reasonably applied, is a valid exercise of the police power. However, such regulation must be non-discriminatory and it must have a solid foundation in some reasonable relationship to the general welfare. Sunad, Inc. v. City of Sarasota, Fla., 122 So.2d 611.
In the instant case, we can find no justification from an aesthetic viewpoint to prohibit motel signs advertising rates but permitting every other type of motel advertising sign imaginable. The motel which can offer an attractive rate is prohibited from announcing its rate advantage while more luxurious establishments are permitted to appeal by advertising signs announcing television, air conditioning, swimming pools, bars and grills and every other conceivable item of tourist attraction. Similarly, all motels are prohibited from advertising rates by signs while every other business in the vicinity is left free to appeal to the passing motorist with signs announcing charges for its goods or services. The motel cannot display its charges on signs, while restaurants, bars, filling stations, and every other type of business catering to travelers are permitted to do so. It seems obvious to us that a rate sign in front of a motel is no more offensive to the aesthetic sensibilities of the traveler or the community than would be a rate sign in the same immediate area advertising the charges of the other business activities. Similarly, a sign advertising rates is not aesthetically distinguishable from a sign advertising various aspects of a motel's services or conveniences. On this score, we have the view that the decision of the District Court of Appeal, First District, in Abdo was correct. Necessarily, therefore, we hold that the decision of the District Court of Appeal, Second District, to the extent that it sustained the subject ordinance on aesthetic grounds, was in error.
The decision which we have for review also upheld the ordinance on the basis of its contribution to the economic welfare of the community. In this regard, it was stated that tourism contributes substantially to the economy of Vero Beach. To support the ordinance it was pointed out that millions of dollars have been invested in luxury motels; that if less attractive establishments were permitted to announce their rates on outdoor signs they would entice travelers away from the more expensive hostelries. It was further contended that visitors would enter the luxury motels and upon learning that they could not obtain accommodations at the rate advertised by the others, they would depart Vero Beach in *212 a huff to the detriment of the motels and the economy of the city generally. It was pointed out that lodging establishments of all types constitute about 10% of the City's total taxable property. Then, it is argued that adverse influences on these businesses would pro tanto adversely react on the City's operating income.
Although the argument advanced by the City appears plausible, we fear that it is not supportable on constitutional grounds. If it were, then any legitimate business practice which provides a competitive advantage over others in the same business could conceivably be condemned by an exercise of the police power. There are cases which recognize the exercise of the police power to promote the general economic welfare of the community. Those which approve comprehensive zoning plans are typical. However, we have found none which permits discriminatory legislation damaging to one segment of a class of businesses and beneficial to another segment of the same class. Such is the impact of the subject ordinance. The employment of the police power will not be upheld when its exercise imposes an unreasonable restriction on private business on the pretense of promoting the community interest. 23 Fla.Jur., Municipal Corporations, Section 141. Neither a state nor a city can arbitrarily interfere in private businesses or impose unreasonable and unnecessary restrictions upon them, under the guise of protecting the public. Sperry & Hutchinson Co. v. McBride, 307 Mass. 408, 30 N.E.2d 269, 131 A.L.R. 1255. In determining the validity of legislation of the instant type, we must consider the effect of the ordinance on the rights of the citizen from the aspect of its practical impact. A restriction of the type here employed must be supported by some sound basis of necessity to protect the public welfare. It must not encroach unreasonably on an individual's right to conduct a legitimate business or discriminate in its application and impact between individuals engaged in the same business. When there is no reasonably identifiable rational relationship between the demands of the public welfare and the restraint upon private business, the latter will not be permitted to stand. Larson v. Lesser, Fla., 106 So.2d 188.
The right to advertise one's business is an aspect of property incidental to the right to engage in the business. A municipality may provide for the protection of the public against fraudulent advertising and, as mentioned above, in appropriate circumstances may move without discrimination to preserve the city's aesthetic qualities. Nevertheless, it does not have the power to impose arbitrary restrictions which deprive an individual of his property rights under the banner of regulation. We have the view that the subject ordinance is nothing less than an attempted exercise of the police power to restrict competition between favored and unfavored segments of the same business activity. If expanded to other fields, such an exercise of power could be destructive of the competitive, free enterprise system. 37 Am.Jur., Municipal Corporation, Section 310. In Town of Miami Springs v. Scoville, Fla., 81 So.2d 188, we were confronted with this same problem of balancing an individual's right to do business against the government's claim of power to regulate. In Scoville a municipal ordinance unreasonably restricting the size and location of gasoline price signs was held unconstitutional. It was considered that the ordinance unduly restricted the individual gasoline dealer's opportunity to compete for customers on the basis of price and commodity offered. In the field of motel and hotel signs, the state has already moved to protect the public against deception. Section 509.201, Florida Statutes, F.S.A.; Adams v. Miami Beach Hotel Ass'n, Fla., 77 So.2d 465.
The appellee asks us to follow the conclusion reached by the Supreme Court of Nevada in Viale et al. v. Foley et al., 76 Nev. 149, 350 P.2d 721. The decision there rested primarily on the presumed validity of an act of the Legislature. It also relied on *213 the Court of Appeal decision in City of Sarasota v. Sunad, Inc., 114 So.2d 377, which was quashed by this Court in Sunad, Inc. v. City of Sarasota, 122 So.2d 611. It further relied on the decision of the Court of Appeal in City of Daytona Beach v. Abdo, 112 So.2d 398, which was subsequently circumscribed in substantial measure by the same court in Abdo v. City of Daytona Beach, 147 So.2d 598, cert. den. March 5, 1963. We are, therefore, not inclined to follow the Nevada decision, particularly in view of the fact that it did not purport to consider the constitutional problems which have been presented to us here.
In view of what we have written above, we are compelled to the conclusion that the subject ordinance is unconstitutional. The decision of the Court of Appeal, sustaining its validity must be and it is hereby quashed.
It is so ordered.
DREW, C.J., and THOMAS, ROBERTS and CALDWELL, JJ., concur.